IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DEERE & COMPANY, )
)
Plaintiff, )
)
v. ) C.A. No. 18-827 (CFC) (JLH)
) CONSOLIDATED
AGCO CORPORATION and )
PRECISION PLANTING LLC, )
)
Defendants. )

**AGCO CORPORATION AND PRECISION PLANTING LLC'S RULE 50(a)
MOTION FOR JUDGMENT AS A MATTER OF LAW**

During this trial, the parties have established a record under which no
reasonable jury could find for Plaintiff Deere & Company ("Deere") on any issue.
The Court has already granted Defendants' motion for judgment as a matter of law
("JMOL") on Deere's willfulness claim.  7/7/22 Trial Tr. at 403:16-408:12.  For the
reasons set forth below, AGCO Corporation and Precision Planting LLC (together
"Precision") respectfully request JMOL on all their remaining claims and defenses
in this case.

**I.      PRECISION IS ENTITLED TO JUDGMENT AS A MATTER OF
          LAW OF NO INFRINGEMENT.**

**A.      No Reasonable Jury Could Find That Deere Has Met Its Burden
          To Prove Direct Infringement.**

No reasonable jury could conclude that Precision has directly infringed claim

1 of U.S. Patent No. 8,813,663 ("'663 patent") or claim 20 of U.S. Patent

1

No. 9,699,955 ("'955 patent").   Under the Court's claim construction, the "seed delivery system" requirement of claim 1 of the '663 patent and the "method of delivering a seed" requirement of claim 20 of the '955 patent cannot be met unless seed is "remove[d] … from the seed meter by capturing the seed."  D.I. 191 [Order] at 3 ("apparatus / system / method that removes seed from the seed meter by capturing the seed and then delivers it to a discharge position"); DDX-10.10.  And each party's technical expert agrees that this claim requirement can be met only if seed is removed from the seed meter in a manner that "control[s] all of the aspects of the motion of the seed."  *See* 7/7/22 Trial Tr. [Fleming] at 272:19-273:1; 7/6/22 Trial Tr. [Glancey] at 177:311 ("complete control of the seed").

No reasonable jury could find the "remove by capture" requirement of the asserted claims met based on the operation of Precision's SpeedTube and vSet 2 products.  *See, e.g.*, 7/7/2022 Trial Tr. [Radtke] at 121:4-149:9, 151:13-157:19; 7/7/2022 Trial Tr. [Fleming] at 237:3-251:13, 254:11-284:25.  The undisputed trial record instead demonstrates that SpeedTube's two feeder wheels remove seed from the vSet 2 seed meter in a very different way—by ***projecting and accelerating*** the seed toward the flighted belt:

- the two feeder wheels first contact the seed (usually at different times), and the total amount of time seed contacts both feeder wheels amounts to just 3 to 6 milliseconds;

2

- the speed of the seed changes drastically as a result of the feeder-wheel contact, from approximately 1 mile per hour as the seed comes off the seed meter to approximately 9 to 10 miles per hour after the feeder wheels strike the seed;

- after contacting the feeder wheels, the seed is projected and accelerated across an open space where no component touches it; and

- when the seed eventually reaches the flighted belt, it will ricochet in an unpredictable manner off the belt, including some instances in which the seed bounces back toward the feeder wheels before entering the belt flights.

*See* 7/7/22 Trial Tr. [Fleming] at 237:3-251:13, 254:11-284:25; 7/7/22 Trial Tr. [Radtke] at 141:11-146:21, 156:3-157:19; 7/6/22 Trial Tr. [Glancey] at 44:4-13; 170:14-171:9, 172:20-22, 173:1-174:9, 174:15-175:10, 175:15-176:7; 176:14-23; 181:6-182:10; 184:9-25; 212:23-213:19; DTX-0001; DTX-0002; DTX-0066; DTX-0364; DDX10.3-18; DDX10.16.

Accordingly, because no reasonable jury could find that SpeedTube's feeder wheels "control all of the aspects of the motion of the seed," Precision is entitled to judgment of no infringement as a matter of law.

**B.      No Reasonable Jury Could Find That Plaintiff Has Met Its Burden To Prove Contributory Infringement.**

To succeed on a claim of contributory infringement, Deere must prove that (1) the accused infringer sold or offered to sell in the United States, or imported into the United States, a component of a patented device or composition, or a material or apparatus that is a component for use in practicing a patented process; (2) the component is a material part of the invention; (3) the accused party knew that the component was especially made or adapted for use in a manner that would infringe the patent when the party sold, offered or imported the component; and (4) the component is not a staple article of commerce capable of substantial non-infringing use. *See* 35 U.S.C. 271(c); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).   Deere failed to present sufficient evidence to prove a claim of contributory infringement.

*First*, as explained in Section I.A, Deere failed to offer evidence sufficient to show that the Precision products at issue infringe the Asserted Patents.

*Second*, for the same reasons argued by Precision and set forth by the Court in granting Precision's motion for JMOL of no willfulness (7/7/22 Trial Tr. at 401:11-408:12), Deere failed to offer any evidence that Precision "knowingly infringed" the asserted patents, as 35 U.S.C. § 271(c) requires.  7/7/22 Trial Tr. at 407:18-20 ("[T]hat is not sufficient in my mind for a rational juror to make a conclusion of willful blindness or knowing infringement."); *see Nalco Co. v. Chem-*

*Mod, LLC*, 883 F.3d 1337, 1356 (Fed. Cir. 2018) ("[C]ontributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."); *see also Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) ("On this question a majority of the Court is of the view that s 271(c) does require a showing that the alleged contributory infringer ***knew that the combination*** for which his component was especially designed ***was both patented and infringing***." (emphasis added)).

For example, the evidence on this issue from Mr. Arnold and Mr. Hansotia, shows that AGCO and Precision acted reasonably in all respects after learning of the asserted patents.  7/7/2022 Trial Tr. [Arnold] at 84:18-85:18; 7/7/2022 Trial Tr. [Hansotia] at 204:8-205:2, 206:12-207:17; DTX-0043R.  In contrast, Deere's only alleged evidence of knowing infringement was that Precision engineers allegedly copied a figure from the '819 application in 2011 (more than three years before the earliest asserted patent issued).  But at this time, the '819 application was not an issued patent with issued claims that could be infringed, and it later issued as a patent that Deere's inventor admits Precision does not infringe.  7/6/2022 Trial Tr. [Glancey] at 151:14-152:19; *id.* at 147:15-148:2; 148:15-151:5; PTX-1244. Moreover, Precision's mere knowledge of a patent application, especially one that did not even lead to the asserted patents, is insufficient for contributory infringement. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011) (section 271(b)

5

requires the "same knowledge" as section 271(c), i.e., "knowledge that the induced acts constitute patent infringement").  In any event, SpeedTube engineer Ian Radtke confirmed that his team did not copy the '819 application, but just reviewed it among other patents, as is their general practice, to ensure no infringement.  7/7/2022 Trial Tr. [Radtke] at 154:10-157:19; *see also* 7/5/2022 Trial Tr. [Thiemke] at 238:24-239:19.  It is thus hardly surprising that Figure 3 of the '819 application is very different from how SpeedTube works, both with respect to the type and operation of wheels used (one wheel vs. two wheels, different shapes and sizes, wheel captures versus wheels project and accelerate) and the use of a brush belt versus a flighted belt.  7/7/22 Trial Tr. [Fleming] at 277:9-279:14; 7/6/22 Trial Tr. [Glancey] at 147:15-148:2; 148:15-151:5.

Thus, JMOL of no contributory infringement is required because Deere failed to provide evidence sufficient to prove that Precision ***knowingly*** infringed either of the asserted patents—i.e., that Precision "knew" that its SpeedTube/vSet 2 combination "was both patented and infringing."  *See Cross Med. Prods.*, 424 F.3d at 1312.

## II.   PRECISION IS ENTITLED TO JUDGMENT OF NO DAMAGES ON PLAINTIFF'S PATENT INFRINGEMENT CLAIMS.

As explained below, Precision is entitled to JMOL of no damages because no reasonable jury could find damages of any amount in light of the evidence presented at trial.

*First*, Deere did not introduce any evidence to support the number of SpeedTube/vSet 2 sales or other financial data underlying Mr. Napper's damages testimony.  For example, Deere did not introduce any documents or fact testimony to support the number of allegedly infringing row units or planters relied upon by Mr. Napper.  *See, e.g.*, 7/7/22 Trial Tr. at 17:2-18:2, 28:5-10, 35:2-37:18 (Mr. Napper testifying based on sales numbers not in evidence), 31:6-33:24 (Deere agreeing not to admit objected-to document purporting to show sales numbers); PDX6-12-15, 19, 21, 22, 28, 36, 38 (showing financial data not in evidence or calculations based on data not in evidence).  Deere cannot prove damages based solely on the unsupported opinion of its expert.

*Second*, to the extent Mr. Napper's damages opinions rely on direct infringement (*see, e.g.*, 7/6/22 Trial Tr. at 356:13-357:19; 7/7/22 Trial Tr. at 17:2-14), Deere failed to offer substantial evidence that the sales numbers Mr. Napper relied upon correlated with instances of direct infringement.  For example, Mr. Napper testified that there were 54,783 sales of SpeedTube/vSet 2 "retrofit kits" (7/7/22 Trial Tr. at 17:10-14), but Deere provided no factual evidence showing that any (much less all) of these sales were in fact sales of the allegedly patented combination rather than sales of separate components that cannot individually infringe.  *See Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 523-524, 528 (1972) (selling machine parts to customers who would assemble the complete

machine did not directly infringe a patent on the machine, because § 271(a) "protects only against the operable assembly of the whole and not the manufacture of its parts"); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 n.2 (Fed. Cir. 2000) ("[A]s to claims brought under § 271(a), *Deepsouth* remains good law: one may not be held liable under § 271(a) for 'making' or 'selling' less than a complete invention.").

**Third**, Deere has failed to show that it is entitled to lost profits for sales of AGCO planters that included SpeedTube and vSet 2 because Deere did not show that its lost profits calculation was properly apportioned.  Parties are required to properly apportion any damages number.  *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1287 (Fed. Cir. 2017) ("[A]pportionment is an important component of damages law generally, and we believe it is necessary in both reasonable royalty and lost profits analysis."); *Ericsson Inc., v. D-Link Systems*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("[A]pportionment is required even for non-royalty forms of damages.").  A plaintiff's use of the *Panduit* factors does not eliminate the need to apportion unless the expert shows that the factors: (1) satisfy the entire market value rule by proving that the patented feature is the basis for customer demand for the entire product at issue; or (2) otherwise account for the value of non-accused features.  *WesternGeco LLC v. ION Geophysical Corp.*, 913 F.3d 1067, 1073 (Fed. Cir. 2019) (apportionment in lost profits is required where the "application of the

Panduit factors does not result in the separation of profits attributable to the patented device and the profits attributable" to the other aspects of the product).

To calculate this category of alleged lost profits, Mr. Napper first took the total revenue for sales of the ExactEmerge planter and divided by the number of row units sold to calculate an average sales price. 7/7/22 Trial Tr. [Napper] at 35:2-37:3. He then multiplied that average sales price by the number of accused sales. *Id.* However, Mr. Napper admitted that the ExactEmerge planter includes many non-patented features, such as an electric drive, a bowl-shaped seed meter, curve compensation, vacuum automation, row cleaners, and pneumatic closing wheels. 7/7/22 Trial Tr. [Napper] at 48:21-50:5. And Mr. Napper admitted he did not attempt to apportion his lost profits number to account for the value of these features. 7/7/22 Trial Tr. [Napper] at 51:15-53:21.

Mr. Napper also fails to show that the patented features are the basis for customer demand. He testified only that he understood that the patented features permit high speed planting, and that high-speed planting formed the basis for customer demand. Trial Tr. [Napper] at 52:1-11, 53:2-7, 54:11-24. He admitted that he did not speak with SpeedTube or AGCO planter customers before arriving at his opinion (*id.* at 43:20-44:13); the ExactEmerge and AGCO planters with SpeedTube have many different features, including that the ExactEmerge has a bowl-shaped meter and brush belt (which is larger and heavier than a flighted belt)

9

while the AGCO planter with SpeedTube has a flat disk meter and flighted belt (*id.* at 45:16-46:23); and he did not know what percentage of SpeedTube customers did not want a brush belt or a one-step handoff from the bowl meter to the brush belt (*id.* at 48:3-18). He further admitted that Deere advertised the above-listed unpatented features as "key features" of the ExactEmerge, and that he did not apportion his damages calculation to account for their value. 7/7/22 Trial Tr. [Napper] at 48:21-51:14, 52:1-53:21; DDX-10.39-43; DTX-703; DTX-155; DTX-364; DTX-702; PTX-299. Mr. Napper's failure to account for these "key features" is fatal to his lost profits opinion. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 979 (Fed. Cir. 2018) ("But when the product contains multiple valuable features, it is not enough to merely show that the patented feature is viewed as essential, that a product would not be commercially viable without the patented feature, or that consumers would not purchase the product without the patented feature. When the product contains other valuable features, the patentee must prove that those other features do not cause consumers to purchase the product." (internal citation omitted)).

Mr. Napper's calculation of lost profits based on AGCO planter sales is thus insufficient and cannot provide a sufficient basis for any reasonable jury to award damages in this case.

***Fourth***, Deere did not offer specific, reliable evidence sufficient to support an award of reasonable royalty damages.  Deere asserted during the charge conference that it had offered evidence of "profit margins" relating to the products at issue. 7/7/22 Trial Tr. at 442:4-17.  But Deere has not provided the jury with any evidence of how this relates to a reasonable royalty.  There has, for example, been no explanation as to (1) what a royalty is, (2) how a royalty is determined, or (3) how any profit margin in the trial record supposedly relates to the value of either asserted patent.  Courts have made clear that the plaintiff cannot simply dump royalty rate arguments into the record and ask the jury to figure out what to do with them. *NexStep, Inc.*, 2021 WL 5356293, at *3 (excluding plaintiff's undisclosed damages argument where allowing the "new theory would require the jury to speculate about the ultimate royalty rate based on testimony from NexStep's witnesses…").

Even if Deere could establish a reasonable royalty (it cannot), Precision is entitled to judgment of no reasonable royalty damages because Deere's reasonable royalty claim relies on instances of alleged contributory infringement, and, as explained above in Section I.B, Precision is entitled to judgment of no contributory infringement.

## III.   PRECISION IS ENTITLED TO JUDGMENT OF INVALIDITY.

If the jury finds infringement of the asserted claims, no reasonable jury could conclude that the asserted claims are not invalid in view of the combination of the

495A planter and Grataloup patent.  *See 01 Communique Lab., Inc. v. Citrix Sys., Inc.*, 889 F.3d 735, 742 (Fed. Cir. 2018) (allowing defendant to argue "that if a claim term must be broadly interpreted to read on an accused device, then this same broad construction will read on the prior art").  Indeed, Precision's expert, Dr. Fleming, presented unrebutted testimony on this point.

No reasonable jury could find that the Deere 495A planter presented at trial is not prior art.  Precision established that the Deere 495A is a planter that was sold, used, and publicly known beginning in the 1960s.  7/7/22 Trial Tr. [Fleming] at 279:15-292:5; DTX-715 [495A with cutaway]; DTX-0213 [sweet corn article]; DDX-10.19.  Precision also established that the physical 495A specimen that Dr. Fleming purchased and presented at trial is an authentic Deere 495A prior art planter with a hopper, seed meter, knocker wheel, flighted belt, and housing.  7/7/22 Trial Tr. [Fleming] at 280:2-292:5; DDX-10.19; DTX-0213 [sweet corn article]; DTX-715 [495A with cutaway]; DTX-548; DTX-566; DTX-567; DTX-255; DTX-550; DTX-560; DTX-564; DTX-577; DTX-578; DTX-579; DTX-580; DTX-585; DTX-586.

Precision also established that U.S. Patent No. 4,029,235 to Grataloup ("Grataloup") issued in 1977 and is thus prior art to the asserted patents.  7/7/22 Trial Tr. [Fleming] at 256:22-258:13; DTX-0211 [Grataloup]; 7/6/22 Trial Tr. [Glancey] at 158:13-15.  It showed that Grataloup is a planter designed to address the problem

12

of accurately planting and uniformly spacing seeds by implementing a device for the reliable transfer of seeds from the meter.  7/7/22 Trial Tr. [Fleming] at 257:11-258:13, 310:16-311:7; DTX-0211 [Grataloup].

Precision also established that a combination of Grataloup's vacuum seed meter and rotary wheel with the 495A's flighted belt and housing meets the asserted claims if Deere is allowed to stretch its claims to cover any wheel that removes seed from a seed meter by contacting the seed and transferring it to a flighted belt.  7/7/22 Trial Tr. [Fleming] at 279:17-280:1; DTX-0211 [Grataloup]; DTX-715 [495A with cutaway].  No reasonable jury could find otherwise.  In particular:

### '663 Patent

***Limitation 1[p]:***  The preamble of claim 1 requires "a seeding machine."  Precision presented uncontroverted evidence that the combination of the 495A planter and Grataloup teaches this requirement.  PTX-0001; 7/7/22 Trial Tr. [Fleming] at 292:9-12; DTX-715 [495A with cutaway]; DTX-0211 [Grataloup]; DTX-0548; DDX-10.20.

***Limitation 1[a]:***  Limitation 1[a] requires "a seed meter having a metering disk with a plurality of apertures in a circular array adapted to adhere seeds to the metering disk to move the seeds along a seed path as the metering disk rotates."  Precision presented uncontroverted evidence that the combination of the 495A planter and Grataloup teaches this requirement.  PTX-0001; 7/7/22 Trial Tr.

13

[Fleming] at 292:13-294:6; DTX-715 [495A with cutaway]; DTX-0211 [Grataloup]; DDX-10.21-23.

*Limitation 1[b]:* Limitation 1[b] requires "a seed delivery system associated with said seed meter, said seed delivery system including." Precision presented uncontroverted evidence that the combination of the 495A planter and Grataloup teaches this requirement under Deere's infringement allegations. PTX-0001; 7/7/22 Trial Tr. [Fleming] at 294:7-295:18; DTX-715 [495A with cutaway]; DTX-0211 [Grataloup]; DDX-10.24-25.

*Limitation 1[c]:* Limitation 1[c] requires "a housing for seed from said metering disk, the housing having a lower opening through which seed is discharged." Precision presented uncontroverted evidence that the combination of the 495A planter and Grataloup teaches this requirement. PTX-0001; 7/7/22 Trial Tr. [Fleming] at 295:19-296:10; DTX-715 [495A with cutaway]; DTX-0211 [Grataloup]; DTX-0585; DTX-0586; DDX-10.26.

*Limitation 1[d]:* Limitation 1[d] requires "a single endless member within said housing disposed around a first drive pulley and a second idler pulley, said endless member engaging seed from the seed meter and moving the seed to said lower opening where seed is discharged from said housing." Precision presented uncontroverted evidence that the combination of the 495A planter and Grataloup teaches this requirement. PTX-0001; 7/7/22 Trial Tr. [Fleming] at 296:11-297:19;

14

DTX-715 [495A with cutaway]; DTX-0211 [Grataloup]; DTX-0560; DTX-0585; DTX-0586; DDX-10.27-28.

*Limitation 1[e]:* Limitation 1[e] requires "a loading wheel engaging seeds adhered to the metering disk and moving along the seed path and guiding the seed into the single endless member whereby the single endless member moves the seed to the lower opening." Precision presented uncontroverted evidence that the combination of the 495A planter and Grataloup teaches this requirement under Deere's infringement allegations. PTX-0001; 7/7/22 Trial Tr. [Fleming] at 297:20-298:11; DTX-715 [495A with cutaway]; DTX-0211 [Grataloup]; DTX-10.29-30; DDX-10.29-30.

Under the evidence at trial, no reasonable jury could find that the 495A/Grataloup combination does not teach all limitations of claim 1 of the '663 patent under Deere's infringement allegations. *See, e.g.*, 7/7/22 Trial Tr. [Fleming] at 279:15-284:20, 288:23-298:18, 307:25-313:25; 7/6/22 Trial Tr. [Glancey] at 159:2-5, 159:17-160:8, 161:4-162:1, 162:7-163:4; 7/5/2022 Trial Tr. [Thiemke] at 225:17-23; 226:19-21; 228:10-23; 230:10-231:6; 7/5/22 Trial Tr. [Garner] at 258:12-259:9, 260:18-261:18, 262:7-264:13, 264:20-265:5, 265:16-19; DDX-10.30.

### '955 Patent

*Claim 16, Limitation 1[p]:* The preamble to limitation 1 of claim 16 requires "[a] method of delivering a seed from a seed meter to a furrow, the method

comprising." Precision presented uncontroverted evidence that the combination of the 495A planter and Grataloup teaches this requirement under Deere's infringement allegations. PTX-0002; 7/7/22 Trial Tr. [Fleming] at 308:2-11-16; DTX-715 [495A with cutaway]; DTX-0211 [Grataloup]; DDX-10.32.

***Claim 16, Limitation 1[a]:*** Limitation 1[a] of claim 16 requires "applying an air pressure differential across a seed meter." Precision presented uncontroverted evidence that the combination of the 495A planter and Grataloup teaches this requirement. PTX-0002; 7/7/22 Trial Tr. [Fleming] at 308:17-309:3; DTX-715 [495A with cutaway]; DTX-0211 [Grataloup]; DDX-10.33.

***Claim 16, Limitation 1[b]:*** Limitation 1[b] of claim 16 requires "retaining a seed within an aperture of a plurality of apertures extending through the seed meter by applying the air pressure differential across the seed meter." Precision presented uncontroverted evidence that the combination of the 495A planter and Grataloup teaches this requirement. PTX-0002; 7/7/22 Trial Tr. [Fleming] at 308:17-309:3; DTX-715 [495A with cutaway]; DTX-0211 [Grataloup]; DDX-10.33.

***Claim 16, Limitation 1[c]:*** Limitation 1[c] of claim 16 requires "carrying the seed retained within the aperture under the air pressure differential to a location." Precision presented uncontroverted evidence that the combination of the 495A planter and Grataloup teaches this requirement. PTX-0002; 7/7/22 Trial Tr.

[Fleming] at 308:17-309:3; DTX-715 [495A with cutaway]; DTX-0211 [Grataloup]; DDX-10.33.

*Claim 16, Limitation 1[d]:* Limitation 1[d] of claim 16 requires "contacting the seed with a moving surface at the location to dislodge the seed from the aperture." Precision presented uncontroverted evidence that the combination of the 495A planter and Grataloup teaches this requirement under Deere's infringement allegations. PTX-0002; 7/7/22 Trial Tr. [Fleming] at 309:4-11; DTX-715 [495A with cutaway]; DTX-0211 [Grataloup]; DDX-10.34.

*Claim 16, Limitation 1[e]:* Limitation 1[e] of claim 16 requires "conveying the dislodged seed via an endless member to a furrow." Precision presented uncontroverted evidence that the combination of the 495A planter and Grataloup teaches this requirement. PTX-0002; 7/7/22 Trial Tr. [Fleming] at 309:4-11; DTX-715 [495A with cutaway]; DTX-0211 [Grataloup]; DDX-10.34.

*Claim 19:* Claim 19 requires "[t]he method of claim 16, wherein the moving surface is a surface of a rotating wheel adjacent the endless member." Precision presented uncontroverted evidence that the combination of the 495A planter and Grataloup teaches this requirement under Deere's infringement allegations. PTX-0002; 7/7/22 Trial Tr. [Fleming] at 309:12-309:11; DTX-715 [495A with cutaway]; DTX-0211 [Grataloup]; DDX-10.34.

*Claim 20:* Claim 20 requires "[t]he method of claim 19, further comprising moving the seed through a nip defined at least in part by the rotating wheel." Precision presented uncontroverted evidence that the combination of the 495A planter and Grataloup teaches this requirement under Deere's infringement allegations. PTX-0002; 7/7/22 Trial Tr. [Fleming] at 309:12-310:4; DTX-715 [495A with cutaway]; DTX-0211 [Grataloup]; DDX-10.35.

Under the evidence at trial, no reasonable jury could find that the 495A/Grataloup combination does not teach all limitations of claim 20 of the '955 patent under Deere's infringement allegations. *See, e.g.*, 7/7/22 Trial Tr. [Fleming] at 309:25-310:4; 7/6/22 Trial Tr. [Glancey] at 159:2-5, 159:17-160:8, 161:4-162:1, 162:7-163:4; 7/5/2022 Trial Tr. [Thiemke] at 225:17-23, 226:19-21, 228:10-23, 230:10-231:6; 7/5/22 Trial Tr. [Garner] at 258:12-259:9, 260:18-261:18, 262:7-264:13, 264:20-265:5, 265:16-19; DDX-10.36.

Precision also presented unrebutted evidence that a person of ordinary skill in the art (POSA) would have been motivated to combine the 495A planter and Grataloup and would have reasonably expected success in doing so. *See, e.g.*, 7/7/22 Trial Tr. [Fleming] at 310:10-311:16; 7/6/22 Trial Tr. [Glancey] at 159:2-5, 159:17-160:8, 161:4-162:1, 162:7-163:4; 7/5/2022 Trial Tr. [Thiemke] at 225:17-23, 226:19-21, 228:10-23, 230:10-231:6; 7/5/22 Trial Tr. [Garner] at 258:12-259:9,

18

260:18-261:18, 262:7-264:13, 264:20-265:5, 265:16-19; DDX-10.37; DTX-0101; DTX-0211 [Grataloup].

No reasonable jury could find non-obviousness based on secondary considerations under Deere's infringement allegations. Deere "retains the burden of proving the degree to which evidence of secondary considerations tied to a product is attributable to a particular claimed invention"—also known as establishing nexus. *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1378 (Fed. Cir. 2019). Deere failed to do so. For example, Dr. Fleming provided uncontroverted expert testimony that there was no nexus between any of the secondary considerations of non-obviousness and Deere's claimed invention. *See, e.g.*, 7/7/22 Trial Tr. [Fleming] at 311:17-312:7; DDX-10.38.

Accordingly, under Deere's infringement allegations, no reasonable jury could find the asserted claims to be non-obvious.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

OF COUNSEL:

Michael J. Summersgill
Mark G. Matuschak
Jordan L. Hirsch
Michaela P. Sewall
Harry D. Hanson
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

Mary (Mindy) V. Sooter
WILMER CUTLER PICKERING
HALE AND DORR LLP
1225 17th Street, Suite 2600
Denver, CO  80202
(720) 274-3135

Heath A. Brooks
WILMER CUTLER PICKERING
HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006
(202) 663-6000

July 8, 2022

_____
Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jtigan@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Defendants AGCO
Corporation and Precision Planting LLC*

## **<u>WORD COUNT CERTIFICATION</u>**

The undersigned counsel hereby certifies that the foregoing document contains 3,978 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the motion. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)

# CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on July 8, 2022, upon the following in the manner indicated:

Adam W. Poff, Esquire                                    *VIA ELECTRONIC MAIL*
Pilar G. Kraman, Esquire
YOUNG CONAWAY STARGATT
   & TAYLOR LLP
Rodney Square
1000 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Richard L. Rainey, Esquire                              *VIA ELECTRONIC MAIL*
Kevin B. Collins, Esquire
Jay I. Alexander, Esquire
Nicholas L. Evoy, Esquire
Daniel E. Valencia, Esquire
R. Jason Fowler, Esquire
Rajesh D. Paul, Esquire
Lindsey C. Staubach, Esquire
Pratik Agarwal, Esquire
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001-4956
*Attorneys for Plaintiff*

Michael R. Morey, Esquire    *VIA ELECTRONIC MAIL*
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
*Attorneys for Plaintiff*

Megan L. Hare, Esquire    *VIA ELECTRONIC MAIL*
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
*Attorneys for Plaintiff*


*/s/ Jack B. Blumenfeld*
_____

Jack B. Blumenfeld (#1014)

2